United States District Court
Southern District of Texas
**ENTERED**
January 20, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

ROGELIO ALEMAN GARCIA,                 §
                                       §
        Plaintiff,                     §
VS.                                    §       CIVIL ACTION NO. 7:16-CV-119
                                       §
CAROLYN W. COLVIN,                     §
                                       §
        Defendant.                     §

## REPORT AND RECOMMENDATION

Plaintiff Rogelio Aleman Garcia filed this action pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner of Social Security's denial of disability benefits.  Plaintiff's application alleged that he became disabled on January 1, 2007, due principally to Post Traumatic Stress Disorder (PTSD) resulting from his military service in Vietnam from 1969 to 1971.  In challenging the Commissioner's denial of benefits, Plaintiff alleges that the Administrative Law Judge (ALJ) erred in three ways: 1) failing to properly consider the Veteran's Administration (VA) 100% disability rating of Plaintiff; 2) improperly determining that Plaintiff's PTSD was non-severe; and 3) failing to obtain a psychologist report by Paul M. Hamilton, Ph.D., which was the basis for the VA's disability determination.  Pending before the Court are Plaintiff's motion for summary judgment and the Commissioner's response.[1]  (Docket Nos. 9, 10.)

A federal court may review the Commissioner's denial of benefits only to determine whether it is supported by substantial evidence and whether the proper legal standards were applied; a court may not re-weigh the evidence or substitute its judgment for the

---

[1] In its response, "the Commissioner respectfully requests that the Court AFFIRM her administrative decision and DISMISS Plaintiff's Complaint."  (Docket No. 10, at 1.)

Commissioner's.  *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).    After carefully considering the record in light of the deferential standard of review that applies, the undersigned concludes that Plaintiff's claims lack merit.  As explained further below, the ALJ did not err in failing to give controlling weight to the VA's disability decision.  The ALJ's thorough written decision also reflects that he properly considered Plaintiff's PTSD in concluding that he retains the functional capacity to perform certain light work that he had done in the past.  Finally, Plaintiff has failed to show that the ALJ erred in failing to obtain a copy of the Hamilton report. In any event, any error would have been harmless because it would not have changed the result. Accordingly, it is recommended that Plaintiff's motion for summary judgment be denied and that the Commissioner's decision be affirmed.

# I.  BACKGROUND[2]

On January 10, 2012, Plaintiff applied for Disability Insurance Benefits (DIB) under sections 216(i) and 223 of Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq.  (Tr. 30, 363-67.)  Plaintiff alleged that he became disabled on January 1, 2007, due to hearing loss and PTSD.  (Tr. 390.)  Plaintiff's application was denied initially and on reconsideration.  (Tr. 264-65.)  Plaintiff then requested a hearing before an ALJ, which was held on November 18, 2013.[3] (Tr. 217-263.)  After the hearing, the ALJ issued a written decision finding that Plaintiff was not disabled because he was able to perform light work, including his past relevant work as an agricultural broker.  (Tr. 30-44.)

---

[2] The Commissioner has filed a transcript of the record of the administrative proceedings (Docket No. 4), which will be cited as "Tr."

[3] An initial administrative hearing was held on July 23, 2013, but it was rescheduled in order to allow Plaintiff additional time to submit medical records/evidence for the ALJ to consider.  (Tr. 209-16.)

Plaintiff filed a request with the Social Security Administration's Appeals Council to review the ALJ's adverse decision.  (Tr. 15.)  The Appeals Council denied review, rendering the ALJ's decision the Commissioner's final decision for purposes of judicial review.  (Tr. 1-4.)  In considering Plaintiff's challenge to the ALJ's decision, the evidence in the record will be summarized.[4]

## A.      Education, Work Experience, and Activities

At the time of the administrative decision, Plaintiff was 64 years old.  He completed the 8th grade in school.  Plaintiff is able to read and write in English.

Plaintiff has a significant work history.  Earning records indicate that he worked in various capacities and earned consistent and sometimes substantial income from 1967-2005.  (Tr. 369-70.)  In the fifteen years prior to filing his disability application, Plaintiff primarily held two similar jobs: 1) a dispatcher at a produce company (1997-1999); and 2) a self-employed produce broker (2000-2005).  (Tr. 382, 395.)

As a dispatcher, Plaintiff worked eight hours daily and would primarily "traffic control for produce trucks to load and unload produce."  (Tr. 391.)  He was not required to do any heavy lifting and spent equal parts of the day walking, standing, and sitting.  (*Id.*)  He also supervised up to four people as a dispatcher.  (Tr. 392.)  As a self-employed produce broker, Plaintiff "called on customers nationwide for produce sales [and] followed up on delivery of produce."  (Tr. 396.)  He likewise did not do any heavy lifting and also supervised several employees.  (*Id.*)  Plaintiff would sit about six hours a day and walk and stand one hour each.  (*Id.*)  Plaintiff has not worked since December 2005.  (Tr. 390.)

---

[4]   The Court must "scrutinize" the record to determine whether the ALJ's decision is supported by substantial evidence.  *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988).  The undersigned has thoroughly reviewed the medical records and other evidence, which will be briefly summarized above.

**B.     The Medical Evidence**

Plaintiff asserted in his application that he was disabled due to hearing loss and PTSD. Although the record reflects that Plaintiff has complained about, and received treatment for, several physical and mental problems, his challenge to the ALJ's decision focuses on his PTSD. This summary of the medical evidence will likewise focus on his PTSD.

The record contains no evidence suggesting that Plaintiff was diagnosed with or treated for PTSD for approximately 35 years following the conclusion of his military service in Vietnam in 1971.   Throughout Plaintiff's medical records, PTSD is absent from the list of his "active problems."  (*See* Tr. 73-74, 86, 120, 123-25, 528, 532, 570, 580.)

According to Plaintiff's hearing testimony, sometime between 2005 and 2007, he visited a doctor to seek treatment for "dizzy spells."   The doctor, upon learning that Plaintiff was a Vietnam veteran, suggested that Plaintiff should make a disability claim with the VA.   Around this time Plaintiff slowly let his produce brokerage business "drift away."   Consistent with his doctor's suggestion, Plaintiff later filed a disability claim with the VA.   Plaintiff does not appear to have ever sought or received treatment for PTSD, other than a VA-sponsored eight-week anger management class that he attended in about 2011.

The only medical source to diagnose Plaintiff with PTSD did so in connection with Plaintiff's VA disability claim.   As part of the VA's disability determination, Paul M. Hamilton, Ph.D., performed a psychological evaluation in August 2010.   Other than this one-time assessment, Dr. Hamilton did not otherwise see Plaintiff or treat him.   Although Dr. Hamilton's report is not part of the record, the VA's written disability decision—which is part of the record—includes a detailed recitation of Dr. Hamilton's findings.

On June 22, 2011, the Department of Veterans Affairs (VA) determined that Plaintiff's PTSD was connected to his service in Vietnam and that it resulted in 100% disability.  (Tr. 443.) The decision was made retroactively effective to August 28, 2009, because that is the date that Plaintiff filed his claim.  (Tr. 445.)  The VA's disability finding was based principally, if not entirely, on Dr. Hamilton's PTSD diagnosis.[5]  (*Id.* at 445-46.)

As noted in the VA's decision, Dr. Hamilton's examination revealed that Plaintiff's orientation, appearance, hygiene, behavior, and communication were within normal limits.  (Tr. 445.)  That examination also showed appropriate thought processes, the ability to understand directions, non-impaired judgment, and normal abstract thinking.  (Tr. 446.)

However, Plaintiff also showed "impaired attention and/or focus" and abnormal speech patterns, including providing irrelevant details and "giving little opportunity for normal back and forth conversation."  (*Id.*)  Plaintiff's subjective complaints to Dr. Hamilton included suicidal and homicidal ideations.  (*Id.*)  Plaintiff also complained that he was "no longer able to work because of [his] irritability and loss of motivation."  (*Id.*)  Dr. Hamilton noted that Plaintiff's "difficulty containing [his] anger, as well as [his] graphic visualization of killing others make it unlikely that [he] would be a good employee, especially if [he] were required to work with the public."[6]  (*Id.*)  Based on Dr. Hamilton's assessment, the VA determined that Plaintiff was disabled due to PTSD.

About six months after the VA's decision, on January 10, 2012, Plaintiff filed his application for social security disability benefits, claiming that he became disabled as of January 1, 2007.  On March 16, 2012, Dr. Noel Nick, Psy. D., examined Plaintiff and performed an

---

[5]  Plaintiff had also sought disability based on various physical ailments, but the VA denied disability on those grounds.  (Tr. 446-48.)

[6]  Plaintiff advised Dr. Hamilton that he imagined himself "getting up and ripping someone's heart out with a knife when [he saw] someone being rude or obnoxious."  (Tr. 446.)

"Initial Evaluation of Residuals of Traumatic Brain Injury (TBI)" and a "Cognitive Screening for Traumatic Brain Injury (TBI)."[7]  (Tr. 179-208.)  As part of the examination, Dr. Nick reviewed Plaintiff's medical file, including the following: 1) Veterans Health Administration medical records; 2) Military service treatment records; 3) Military enlistment examination; 4) Military separation examination; and 5) Department of Defense Form 214 separation document.  (Tr. 180.)  Dr. Nick noted that Plaintiff had a "negative PTSD screen in 2004 and positive PTSD screen on 3/15/2010."  (Tr. 187.)   Notably, Dr. Nick reviewed the "PTSD and Cognitive Screening Exam" that was performed by Dr. Hamilton on August 27, 2010.  (Tr. 187.)

Dr. Nick noted that Plaintiff was first diagnosed with TBI two years earlier, on July 31, 2010.  (Tr. 179.)  He summarized the possible service-related cause of Plaintiff's TBI as follows:

> In Oct. 1970, [Plaintiff] was "dead center" in an explosion.  He was riding on an Armored Personnel Carrier and it hit a land mine on the side where he was sitting.  He watched the flames come up and it "kicked up the vehicle" and it "hit him up in the air" about 5-7 feet, and then he landed outside the vehicle in the hole in the ground.  He reports that he couldn't keep his balance and he had problems getting up and when he tried, he fell.  He crawled over to his weapon and it had broken in half.  In summary, he had no [loss of consciousness] at the time, but did have loss of balance.  In the helicopter, as he was being medically evacuated, he "passed out" and woke up 4-5 days later.  He knew it was 4-5 days later because his roommate told him.

(Tr. 179-80.)

Dr. Nick's examination included a visual/spatial test of Plaintiff's memory, attention, language, abstraction, delayed recall, and orientation.  (Tr. 182.)  Plaintiff scored 20/30 for that test, which is considered below normal.  (*Id.*)  Dr. Nick found Plaintiff's judgment, motor activity, communication, and consciousness to be within "normal" ranges.  (Tr. 190, 192-93.) He also found Plaintiff's "memory, attention, concentration, and executive functions" to be only

---

[7]   It appears that Dr. Nick performed this assessment at the request of the VA in connection with a disability claim based on TBI.  (*See* Tr. 279-208.)

mildly impaired.  (*Id.*)  Dr. Nick likewise found Plaintiff to suffer from occasional disorientation and as well as mild headaches and mild anxiety.  (*Id.*)  Finally, Dr. Nick also noted that Plaintiff reported social interactions that were "occasionally inappropriate."  (Tr. 190.)

Based on Plaintiff's medical history and the results of the examination, Dr. Nick concluded that Plaintiff's "claimed condition[s] [were] less likely than not (less than 50 percent probability) incurred or caused by [his] in-service injury."  (Tr. 187.)   In support of his opinion that Plaintiff's alleged symptoms were not likely caused by his head injury in Vietnam, Dr. Nick also noted that Plaintiff reported that his current symptoms began between 7-15 years ago, whereas his head injury occurred approximately 41 years ago.  (*Id.*)

On September 18, 2012, a state agency psychologist, Dr. Charles Lawrence, Ph.D., reviewed Plaintiff's medical records and performed a "psychiatric review technique."  (Tr. 492-506.)  Dr. Lawrence determined that there was insufficient medical evidence in the record to support Plaintiff's alleged disabling conditions (hearing loss and PTSD).  (Tr. 492-94.)  A second state agency expert, Dr. Anthony Hammond, M.D., reviewed Plaintiff's medical records and concurred with Dr. Lawrence's assessment.  (Tr. 508-09.)

## C.    The Evidentiary Hearing

An evidentiary hearing was held on November 18, 2013, in Rio Grande, Texas.  (Tr. 217-63.)  Two witnesses testified: Plaintiff and Molly Malloy Kelley, a vocational expert.  Plaintiff was represented at the hearing by Delmar Fankhauser.[8]

The ALJ's written decision includes the following summary of Plaintiff's hearing testimony:

---

[8]    It is unclear whether Mr. Fankhauser is an attorney.  During the hearing, the ALJ referred to him as "counsel," and Mr. Fankhauser did not clarify his role.  (*See, e.g.*, Tr. 220.)  The ALJ's written decision indicates that Mr. Fankhauser assisted Plaintiff as "a non-attorney representative." (Tr. 30.)

[T]he claimant testified at length that he only became aware that he suffered from posttraumatic stress disorder when he went to his doctor for "dizzy spells" at some point around 2005 to 2007, and when he approached a local physician to treat his dizzy spells, the doctor discovered that [he] had a history of being injured during the Vietnam era and suggested that he go to the VA and establish a disability claim.   The claimant conceded that no physician had drawn a correlation between his dizzy spells and PTSD.

However, he also alleged that he had been suffering symptoms during the time that he was operating his produce brokering business, but did not act as though anything was [un]usual.  He described that he used to work for another company in the 1980s before he obtained his own brokerage license in the 1990s and began operating his own business.  He stated that he typically had four to five people working for him and that he hired and fired his employees, but then he acknowledged that the people that worked for him were forklift drivers, unloaders, secretaries, and bookkeepers.  Furthermore, he noted that he leased a warehouse to run his business.

He indicated that after he began experiencing his symptoms around 2005 to 2007 (the dates the claimant gave in his testimony were not pinpoint), that he slowly let his business "drift away" by failing to show up for work and neglecting tasks that needed to be done.  The claimant did not testify as to when the business ceased operations entirely.  The claimant testified that around this time that he began suffering from "forgetfulness" in which he would do things like fail to send out orders that he customers placed, as well as lose track of where he left his car keys.

Upon examination by his representative, the claimant recalled having other symptoms such as panic attacks, nightmares, and hearing or seeing things that were not there.  He said that he usually had about none to two panic attacks per month that lasted about thirty minutes apiece.  He also stated that he sometimes believed that he heard people speaking in another room, but would discover that nobody said anything.  His representative pointed out that he had previously reported seeing people in mirrors.  Moreover, he recalled having a dream a couple of months before the hearing where he and some other soldiers were engaged in some sort of operation in Vietnam.

(Tr. 33-34.)

The vocational expert, Ms. Kelley, testified that Plaintiff's prior work in the produce industry would be classified as follows:

1)    Dispatcher, sedentary exertional level, semi-skilled;

2)    Produce Clerk, medium exertional level, unskilled;

3)    Produce Stock Clerk, heavy exertional level, semi-skilled; and

4)    Agricultural Produce Broker, sedentary exertional level, skill level 6.  (Tr. 252-

56.)  The ALJ asked Ms. Lloyd to assume the following:

> [A]ssume [an] individual is limited to a range of light lifting 20 pounds occasionally, 10 pounds frequently, and carrying 20 pounds occasionally, 10 pounds frequently.  Sitting up to six hours in an eight hour day, standing and walking up to six hours in an eight hour day.  Pushing and pulling as much as lifting and carrying.  The hypothetical individual would be limited to only occasional overhead reaching with the right upper extremity.  Would be limited to occasional kneeling and occasionally climbing ladders and scaffolds.  The hypothetical individual – that's all the limitations for that particular hypothetical.

(Tr. 256-57.)  When asked if a person with these limitations could perform Plaintiff's past work, Ms. Kelley responded that the person could only perform Plaintiff's jobs as a dispatcher and also as an agricultural produce broker.  (Tr. 258.)  When asked to further assume that the person "would be off task occasionally, up to the occasional level throughout the day due to dizziness," Ms. Kelley responded that such a person could not perform any of Plaintiff's past work.  (*Id*.)

**D.**    **The ALJ's Decision**

The ALJ's written decision is lengthy and detailed, consisting of fifteen (15) pages of single-spaced type.  (Tr. 30-44.)  In making his decision, the ALJ applied the five-step method for evaluating disability claims.[9]

The ALJ first found (at Step One) that Plaintiff had not performed substantial gainful activity since the alleged onset date of disability, January 1, 2007, through his date last insured of December 31, 2007.  (Tr. 33.)  In considering the severity of Plaintiff's impairments (Step Two), the ALJ determined that Plaintiff had the following "severe" medical impairments: "tinnitus, degenerative arthritis of the right knee, and right shoulder arthralgia."  (*Id*.)  The ALJ found that

---

[9] The five-step process for determining whether a plaintiff is eligible for benefits will be explained further in the Standard of Review section of this report, *infra* Part II.A.

Plaintiff's "medically determinable mental impairment of posttraumatic stress disorder did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and was therefore nonsevere." (*Id.*)  In making this finding, the ALJ reviewed at length the evidence relating to Plaintiff's mental health and explained his analysis of this evidence in the context of the applicable legal standard, which requires an assessment of his mental impairment in the context of four broad functional areas.  (Tr. 36-37.)  The ALJ also found that Plaintiff's impairments were not severe enough, singly or collectively, to meet or medically equal one of the listed impairments in the regulations (Step Three).  (Tr. 38.)

The ALJ next assessed Plaintiff's residual functional capacity (RFC) to do physical and mental work activities.  The ALJ made the following RFC finding:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) as he is able to lift, carry, push, and pull up to 10 pounds frequently and 20 pounds occasionally.  He can sit, stand, and walk for up to six hours each.  Furthermore, he can occasionally overhead reach with the right upper extremity.  He can occasionally climb ladders, ropes, and scaffolds; and occasionally kneel.

(Tr. 38.)  In making this finding, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id.*)  In particular, the ALJ assessed Plaintiff's subjective complaints and, in doing so, provided a lengthy review of the medical records and other evidence.  (Tr. 39-43.)  He concluded that Plaintiff's medically determined impairments could reasonably be expected to cause the alleged symptoms, but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  (Tr. 41.)

In considering whether Plaintiff could perform any of his past relevant work (Step Four), the ALJ relied on the testimony of the vocational expert, Ms. Kelley.  She opined that, given the

ALJ's hypothetical RFC presented to her, Plaintiff could perform two of his past jobs, including his previous work as an agricultural broker.  (Tr. 43.)  From this, the ALJ concluded that Plaintiff is not disabled.  (Tr. 44.)

**E.      Procedural History**

Plaintiff sought administrative review of the ALJ's decision.   The Appeals Council concluded that there was no basis for challenging the decision, rendering it the Commissioner's final decision for purposes of judicial review.   The instant action followed in which Plaintiff seeks review of the decision pursuant to 42 U.S.C. § 405(g).  (Docket No. 1.)  Plaintiff's motion for summary judgment is pending.  (Docket No. 9.)   The motion will be analyzed in light of the applicable standard of review.

## II.  ANALYSIS

**A.      Standard of Review**

To qualify for benefits under the Social Security Act (the "Act"), Plaintiff bears the burden of proving that he is disabled.  42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); *see also Fraga v. Bowen*, 810 F.3d 1296, 1301 (5th Cir. 1987) (citing *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983)).  The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or

psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at §§ 423(d)(3), 1382c(a)(3)(D).

To determine whether a claimant is disabled within the meaning of the Act, the Commissioner applies the following five-step inquiry:

(1) whether the claimant is currently working in substantial gainful employment;

(2) whether the claimant suffers from a severe impairment;

(3) whether the claimant's severe impairment is sufficient under the pertinent regulations to support a finding of disability;

(4) whether the claimant is capable of returning to his or her past relevant work; and, if not,

(5) whether the impairment prevents the claimant from performing certain other types of employment.

*See* 20 C.F.R. §§ 404.1520, 416.920.

A finding that a claimant is disabled or not disabled at any point in the five-step inquiry is conclusive and terminates the analysis. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). At Steps One through Four, the burden of proof rests upon the claimant to show that he is disabled. If the claimant satisfies this responsibility, the burden then shifts to the Commissioner at Step Five of the process to show that there is other gainful employment that the claimant is capable of performing despite her existing impairments. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). Although the burden is initially on the Commissioner at Step Five, once the Commissioner makes a showing that the claimant can perform other work, the burden shifts back to the claimant to rebut the finding that there are jobs that exist in significant numbers that the claimant could perform. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "Throughout the process, the ultimate burden of establishing disability remains with the claimant." *Strempel v.*

*Astrue*, 299 F. App'x 434, 437 (5th Cir. 2008) (citing *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983)).

In this case, the ALJ found at Step Four that Plaintiff was capable of performing jobs included in his past relevant work.  Given the ALJ's Step Four finding, the burden of proof remained with the Plaintiff.

A federal court's review of the Commissioner's final decision is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Masterson*, 309 F.3d at 272. Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  It is more than a mere scintilla, but less than a preponderance.  *Id.*  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Id.*  Evidentiary conflicts are for the Commissioner to resolve, not the courts.  *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).  This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present.  *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988).  In applying this deferential standard, however, the Court is not a "rubber stamp" for the Commissioner's decision, particularly given the importance of the benefits in question.  *Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 500 (S.D. Tex. 2003).

**B.    Issues**

In seeking review of the Commissioner's denial of benefits, Plaintiff makes three main arguments: 1) the ALJ failed to properly consider the VA's 100% disability rating; 2) the ALJ improperly determining that Plaintiff's PTSD was non-severe; and 3) the ALJ failed to obtain

Dr. Hamilton's report that the VA relied on in determining Plaintiff's 100% disability rating. (Docket No. 9, at 4-6.)

The Commissioner contends in her response "that substantial evidence and relevant legal precedent support her decision finding Plaintiff not disabled."  (Docket No. 10, at 6.)   The Commissioner also responds to Plaintiff's specific issues.  (*Id*. at 4-6.)  The issues raised by the parties will be addressed in the context of the standard of review that applies in social security cases (as discussed above).

**C.      The VA's 100% Disability Rating**

Plaintiff's first claim is that the ALJ failed to properly consider the VA's 100% disability rating.  (Docket No. 9, at 4-5.)  Plaintiff argues that "[a]s per *Stone v. Heckler*, 752 F.2d 1099, [his] PTSD impairment cannot be 'non-severe,' because to meet the severity threshold 'the claimant need make only . . . a *de minimus* showing' that his impairment is severe enough to interfere with his ability to do work."  (*Id.* (quoting *Anthony v. Sullivan*, 954 F.2d 289, 294 n.5 (5th Cir. 1992)).  Plaintiff then concludes that the "100% decision clearly exceeds the above-referenced 'threshold' and the ALJ's finding that [his] PTSD was 'nonsevere,' was incorrect." (Docket No. 9, at 5.)   The Commissioner argues that "[t]he ALJ gave full [and proper] consideration to the [VA's] finding."  (Docket No. 10, at 4.)

The Fifth Circuit has held that the Commissioner is not legally bound by a VA disability rating because the two agencies apply different criteria, "but [the rating] is evidence that is entitled to a certain amount of weight and must be considered by the ALJ."  *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).  "[T]he relative weight to be given this type of evidence will vary depending upon the factual circumstances of each case ... and ALJs need not give 'great weight' to a VA disability determination if they give adequate reasons for doing so."

14

*Id.* An ALJ may ultimately disagree with the findings of the VA if the findings and the underlying evidence are considered.[10]  *See id.*; *see also Kinash v. Callahan,* 129 F.3d 736, 739 (5th Cir.1997).

Here, it is clear from the ALJ's decision that he did consider Plaintiff's VA disability rating in assessing his RFC.  The ALJ wrote:

> While the record showed that the claimant had undergone a psychological evaluation in August 2010, and that a fact finder assessed that he was 100 percent disabled from posttraumatic stress disorder in June 2011, the record did not support that he had a severe impairment under the definition used in Stone v. Heckler.  The fact finder recounted that the claimant first submitted a claim on August 28, 2009, and based that [ ] 100 percent [ ] upon the psychologist's report. (Exhibit 14E/3).
>
> [Noting the following findings by the psychologist:] [ ] gross impairment of thought process, persistent delusions, inappropriate behavior, a tendency to be a danger to himself or others, and intermittent inability to perform his activities of daily [living] such as by failing to maintain personal hygiene, disorientation to time or place, and memory loss for names of close relatives.  (Exhibit 14E/4).  The fact finder relied upon the fact that he had a service-related injury for which he was awarded the Purple Heart and the representations made during the VA examination awarding 100 percent disability.
>
> Notably, the psychologist described that the claimant's appearance and hygiene were "appropriate," as was his behavior and his ability to maintain eye contact throughout the examination.  (Exhibit 14E/4).  Then, the fact finder delved into the claimant's subjective complaints that were voiced during the examination, such as his perception that he had "abnormal speech" that occurred "persistently," tearfulness and remorse for surviving the conflict, and panic attacks that occur less than once per week that coincide with being upset with someone or being around others.  (Exhibit 14E/4-5).  Additionally, he expressed that he had learned not to trust anyone and that he saw people in mirrors that were not present.  The claimant endorsed that he had suicidal ideations as well as homicidal ideation that

---

[10]   The standard applied by the Fifth Circuit is consistent with the Commissioner's regulations, which provide:

> A decision by ... any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504.

manifested as the desire to rip someone's heart out with a knife when he observed someone being rude or obnoxious.

The examiner did not see any signs of delusions or hallucinations.  In fact, he assessed that he was able to understand directions, did not have slowness of thought, nor appeared confused.  (Exhibit 14E/5).  He also assessed that there was not impairment of judgment.

The fact finder relied upon the claimant's assertions that he had not worked in four years as well as the examiner's assessment that because the claimant had visualized killing other people and had self-described problems containing his anger that he would not be a good employee.

Therefore, he believed that the claimant was 100 percent disabled.  Interestingly, the fact finder noted that the examiner diagnosed that he had "dementia," but did not consider this part of the disability aware because this was considered to be a "disease of the brain."

(Tr. 34-35.)  This detailed discussion of the evidence regarding the VA's disability rating clearly shows that the ALJ considered those findings and the underlying evidence related to those findings.

 In considering the VA's finding, the ALJ also took into account the other evidence in the record, including the medical evidence and Plaintiff's testimony regarding his daily activities. As the ALJ noted, Plaintiff "did not submit any treating source evidence" in support of his claim of disability due to PTSD.  (Tr. 33 (the psychologist "performed a one-time evaluation" and "had not formed a treating relationship with the claimant").)  "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Newton*, 209 F.3d at 455.  In fact, there is no medical evidence in the record to show that Plaintiff suffered from PTSD as of 2007, let alone that it was "severe."  Specifically, the ALJ pointed out that "[t]he earliest actual treating source notes consisted of a nursing telephone encounter that he had in July 2011."  (Tr. 35, 600-05.)  Notably, the nurse performed a PTSD screening test on Plaintiff, and it was "negative."  (Tr. 602.)  The ALJ's conclusion is further supported by two state agency

consultants (a psychologist and a medical doctor) who opined that there was insufficient evidence to support Plaintiff's allegation of severe PTSD.[11]  (Tr. 36.)

In addition, the timing of the VA's decision is significant in this case.  "The Social Security Act provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability."  *Loza v. Apfel*, 219 F.3d 378, 390 (2000) (citing 42 U.S.C. § 423(a)(1)(D)).  However, to prove that he is entitled to disability benefits, Plaintiff must not only prove that he is disabled, but also that he became disabled prior to the expiration of his insured status.  *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) (citing 42 U.S.C. § 423(a), (c)).  Here, Plaintiff's insured status expired on December 31, 2007.  (Tr. 32.)  The VA's 2011 disability decision was made retroactively effect to August 2009.

It bears repeating that "[t]hroughout the process, the ultimate burden of establishing disability remains with the claimant."  *Strempel*, 299 F. App'x at 437.  And Plaintiff must not only prove that he is disabled, but also that he became disabled prior to the expiration of his insured status.  *Anthony*, 954 F.2d at 295.  Given the fact that Plaintiff's VA disability rating was based on a non-treating source's opinion from August 2010—over two years after his insured status expired—the ALJ did not err in refusing to give it controlling weight, particularly in light of all the other evidence in the record.

For these reasons, there is no merit to Plaintiff's claim that the ALJ erred in failing to give appropriate consideration to the VA's disability determination.

---

[11]   The ALJ was required to consider the opinions of state agency medical specialists. The regulations explain that the state agency consultants "are highly qualified" physicians and psychologists "who are also experts in Social Security disability evaluation."  20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i).  As such, the ALJ "must consider findings of State agency medical and psychological consultants . . . as opinion evidence," except on the ultimate issue of disability.  *Id.*

**D.    The ALJ's Non-Severe PTSD Rating**

Next, Plaintiff argues that the ALJ's finding that his PTSD was non-severe was "clear error."  (Docket No. 9, at 5.)  Plaintiff claims that the ALJ failed to properly apply the standard for determining whether an impairment is severe as required by the Fifth Circuit's holding in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir.1985).  The Commissioner argues that because Plaintiff failed to show that he received medical treatment of any kind for PTSD during the relevant time period of 2007, "the ALJ properly determined that his [PTSD] was not severe."  (Docket No. 10, at 5.)

A severe impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  The Fifth Circuit has held that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work."  *Stone v. Heckler*, 752 F.2d 1099, 1101, 1104–05 (5th Cir.1985).  In making a severity determination, the ALJ must set forth the correct standard by reference to Fifth Circuit opinions or by an express statement that the Fifth Circuit's construction of the regulation has been applied.  *See Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986).

The ALJ's written decision shows that he understood the correct legal standard in considering (at step two of the disability analysis) whether Plaintiff's PTSD was a severe impairment.  In fact, the ALJ quoted the language (quoted above) from the Fifth Circuit's *Stone* opinion.  (Tr. 33.)

The ALJ's decision also reflects that he then applied the correct standard.  In determining whether Plaintiff's PTSD constituted a severe impairment, the ALJ reviewed at length the

medical evidence relating to Plaintiff's mental health, as well as his subjective complaints.  (Tr. 33-37.)  The ALJ described his conclusion and mode of analysis as follows:

> The claimant's medically determinable mental impairment of posttraumatic stress disorder did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and was therefore nonsevere.
>
> In making the finding that the claimant's mental impairment was non-severe at the hearing level, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1).  These four broad functional areas are known as the "paragraph B" criteria.

(Tr. 33, 36.)  The four functional areas are: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of decompensation.  The ALJ provided a detailed assessment of Plaintiff's limitations, specifically addressing each of these four functional areas.  (Tr. 36-37.)  The ALJ concluded that "[b]ecause the claimant's medically determinable mental impairment caused no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, it was nonsevere (20 CFR 404.1520a(d)(1))."  (Tr. 37.)

In any event, even if the ALJ had erred in failing to find that Plaintiff suffered from a severe mental impairment (PTSD) at Step Two, any such error would have been harmless.  The Fifth Circuit does not require "procedural perfection ... unless it affects the substantial rights of a party."  *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012).  Here, the ALJ did not end his analysis with a disability finding at Step Two, but rather he considered all of Plaintiff's alleged impairments and symptoms in determining at Step Four that Plaintiff retained the ability to perform his past relevant work as a produce broker.  (Tr. 38-43.)

The ALJ's finding is supported by substantial evidence, as reflected by his detailed written findings in support of the conclusion that Plaintiff was capable of performing his past

work.[12]  (*Id.*)  Among other things, the ALJ observed that Plaintiff "did not submit any treating source evidence" regarding his mental health (Tr. 33), nor was there any medical evidence in the record that Plaintiff had seen a doctor of any kind prior to 2008, when his insured status expired. *See Clayborne v. Astrue*, 260 F. App'x 735, 737 (5th Cir. 2008 (failure to seek treatment for an alleged disability weighs against the claimant's credibility); *see also Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (the ALJ may rely "upon the lack of treatment as an indication of nondisability").

In addition, as the ALJ pointed out, Plaintiff "alleged that he had been suffering symptoms during the time that he was operating his produce brokering business, but did not act as though anything was [un]usual."  (Tr. 33.)  Plaintiff "worked in the produce brokerage business for close to 30 years without any known impediment."  (Tr. 35.)  The ALJ further noted that Plaintiff engaged in essentially normal activities of daily living, including driving his car, doing chores around the house, and shopping (although he avoided going when stores would be crowded).  (Tr. 40.)

In sum, because the ALJ applied the correct standard at step two of the disability analysis, there is no merit to Plaintiff's claim that the ALJ should have found his mental

---

[12]  The ALJ also made detailed findings in support of his Step Two analysis.  (Tr. 33-38.) The ALJ explained how his Step Two assessment of Plaintiff's mental impairment related to his RFC assessment:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(Tr. 37.)

impairment to be "severe."  Moreover, even if the ALJ had erred on that issue, any such error was harmless because the ALJ's Step Four analysis is supported by substantial evidence.

E.     **The ALJ's Failure to Obtain the Hamilton Report**

Plaintiff claims that "[t]he ALJ repeatedly emphasized the need for the Hamilton report," yet he "negligently failed to obtain it."  (Docket No. 9, at 5.)   The Commissioner argues that because the Hamilton report "was completed 2 ½ years after his alleged onset date," it is of little "probative value," and the ALJ's failure to obtain a copy of it was harmless error.  (Docket No. 10, at 5-6.)

Significant effort was made to obtain a copy of Dr. Hamilton's report.  In fact, Plaintiff, Plaintiff's representative (Mr. Fankhauser), the ALJ, and U.S. Congressman Ruben Hinojosa made attempts to obtain a copy of the Hamilton report from the VA.  (*See, e.g.*, Tr. 16-25, 143-44, 148, 227-28, 476-77, 480-90.)   None were successful.  At the evidentiary hearing, Plaintiff advised the ALJ that he was examined by Dr. Hamilton at a private office in Corpus Christi, Texas, or Rockport, Texas.  (Tr. 259-60.)  Based on this, the ALJ sent requests for the report to the VA's Harlingen and Victoria offices, both of which responded that there were no files for Plaintiff there.  (Tr. 30.)  Although Plaintiff criticizes the ALJ for failing to request the report from the VA's Houston office, Plaintiff provides no evidence that the report is actually located in that office.[13]   Plaintiff also fails to explain why he or his representative could not obtain the report from the Houston VA office or wherever it is located.[14]

---

[13] At the hearing, Plaintiff and his representative advised the ALJ that the Houston VA office was "where the disability is handled."  (Tr. 259.)  The ALJ then asked about where Dr. Hamilton's office was located, apparently believing that was a better indicator of where the report could be obtained.  (Tr. 259-60.)

[14] At the initial scheduled hearing, Plaintiff's representative requested that the ALJ continue the hearing in order "to obtain through the VA [Plaintiff's] full medical records."  (Tr. 212.)  The hearing was continued for this purpose.  By the time the hearing was held, Plaintiff's

Although Dr. Hamilton's report was never obtained, the VA's written disability decision is part of the record, and it includes a detailed description and discussion of the findings in Dr. Hamilton's report. (Tr. 443-51.) The ALJ considered Dr. Hamilton's findings and discussed them in some detail in his written decision. (Tr. 33-37.) As the ALJ noted, "it seemed that the contents of whatever report that might exist were summarized *in a favorable light* in the VA Rating Decision." (Tr. 43 (emphasis added).) In other words, the ALJ's decision took into account the findings from Dr. Hamilton's report that were most favorable to Plaintiff.

Even assuming that the ALJ erred in failing to obtain a copy of the Hamilton report, any error would be harmless. As the Fifth Circuit has observed: "Procedural perfection in administrative proceedings is not required." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *see also Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (applying harmless error analysis in the disability benefits context). A court "will not vacate a judgment unless the substantial rights of a party are affected." *Mays*, 837 F.2d at 1364. Moreover, for a plaintiff to prevail on the ground that the ALJ failed to fulfill his duty to adequately develop the record, prejudice must be shown. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *see also Newton v. Apfel,* 209 F.3d 448, 458 (5th Cir. 2000) (holding that an ALJ's failure to request additional information required reversal "only if the applicant shows prejudice"). "To establish prejudice, a

---

representative had submitted records from the VA, including the VA's decision finding that Plaintiff was disabled due to PTSD. (Tr. 220.) There were "about 90 pages of VA records." (Tr. 229.) Plaintiff's representative advised the ALJ that "[t]he records [are] complete this time." (Tr. 220.) Later in the hearing, the absence of Dr. Hamilton's report was discussed. Plaintiff and his representative described Plaintiff's attempts to obtain the report from the VA. (Tr. 227-28.) The ALJ stated that his office would request the records. (Tr. 229.) Plaintiff's representative stated that they would also continue to attempt to obtain them. (*Id.*) At the conclusion of the hearing, the ALJ urged Plaintiff and his representative to continue to seek copies of the records and stated that "if you do get a record from anybody whatsoever please send it in." (Tr. 260.) It is unclear what, if anything, Plaintiff and his representative did to obtain the report after the hearing or why their efforts were unsuccessful, particularly since they had previously obtained "about 90 pages of VA records" (presumably from the Houston VA office).

claimant must show that he could and would have adduced evidence that might have altered the result." *Brock*, 84 F.3d at 728.

Plaintiff has failed to show any reason to conclude that the decision would have been different had a complete copy of Dr. Hamilton's report been available.   The VA's decision described the findings in the report that were favorable to Plaintiff, and the ALJ took those into account in his decision, along with the other evidence in the record.   Plaintiff offers no evidence to show that the complete report contained any material findings that were not considered by the ALJ.   Apart from this, the relevance of Dr. Hamilton's report is diminished because it addresses Plaintiff's mental status as of August 2010, which is about three years after the period for which Plaintiff is seeking disability benefits (January 2007 through December 2007).   *See Castillo v. Barnhart*, 325 F.3d 550, 551-52 (5th Cir. 2003) (Evidence is considered material when it "relates to the time period for which the disability benefits were denied."); *see also Butler v. Shalala*, 5 F.3d 529, at *5 (5th Cir. 1993) (the Court may decline to consider evidence that relates to a time period after the date last insured).   Under all these circumstances, any error by the ALJ in failing to take further steps to locate the report was harmless.

Plaintiff is to be commended for his noble service to his country during the Vietnam War. Neither the ALJ's decision nor this report in any way call into question Plaintiff's honorable service in the military.   Nevertheless, because Plaintiff has failed to show either that the ALJ applied the wrong legal standard or that his decision was not supported by substantial evidence, the Commissioner's decision denying Plaintiff disability claim should be affirmed.

## III.  CONCLUSION

For the foregoing reasons, the undersigned recommends that Plaintiff's Motion for Summary Judgment (Docket No. 9) be DENIED, that the Commissioner's decision be AFFIRMED, and that this action be DISMISSED.

## NOTICE TO THE PARTIES

The Clerk shall send copies of this Report and Recommendation to the parties who have fourteen (14) days after receipt thereof to file written objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure.  Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in this Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

DONE at McAllen, Texas on January 18, 2017.

Peter E. Ormsby
United States Magistrate Judge